# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2022AP1076

† Petition for Review filed

Complete Title of Case:

**ARTILLIS MITCHELL,**

      **PETITIONER-APPELLANT,†**

      **V.**

**CHRIS S. BUESGEN AND KEVIN A. CARR,**

      **RESPONDENTS-RESPONDENTS.**

| | |
|---|---|
| Opinion Filed: | February 22, 2024 |
| Submitted on Briefs: | May 11, 2023 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Kloppenburg, P.J., Blanchard, and Graham, JJ. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS:      On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Douglas M. Raines* and *Emily Logan Stedman* of *Husch Blackwell LLP*, Milwaukee.

Respondent
ATTORNEYS:      On behalf of the respondents-respondents, the cause was submitted on the brief of *Karla Z. Keckhaver*, assistant attorney general, and *Joshua L. Kaul*, attorney general.

# COURT OF APPEALS
## DECISION
## DATED AND FILED

## February 22, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1076**

STATE OF WISCONSIN

Cir. Ct. No. **2022CV1204**

IN COURT OF APPEALS

---

**ARTILLIS MITCHELL,**

  **PETITIONER-APPELLANT,**

 V.

**CHRIS S. BUESGEN AND KEVIN A. CARR,**

  **RESPONDENTS-RESPONDENTS.**

---

APPEAL from an order of the circuit court for Dane County: SUSAN M. CRAWFORD, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Graham, JJ.

¶1 BLANCHARD, J. Artillis Mitchell, an inmate at Stanley Correctional Institution, appeals a circuit court order dismissing his petition for a writ of certiorari. Mitchell seeks to challenge a disciplinary determination and sanction against him issued by a prison disciplinary committee. The court

dismissed Mitchell's writ petition on the ground that he failed to properly commence the action within 45 days of an adverse decision by the secretary of the state Department of Corrections ("the department") on his related inmate complaint. *See* WIS. STAT. § 893.735(2) (2021-22) (setting a 45-day limitation period to commence action, which is triggered by accrual of an action).[1] More specifically, the court dismissed the action because Mitchell failed to submit to the court, within the 45-day limitation period, copies of all of the written materials that had been generated by Mitchell's exhaustion of potential administrative remedies, as required by WIS. STAT. § 801.02(7)(c).[2]

¶2      Mitchell argues that the 45-day limitation period was tolled because he encountered delays in obtaining a document that he timely requested from prison staff and that was related to his request for a waiver of prepayment of the costs and fees required to permit filing of the writ petition. But Mitchell does not dispute that he had control over all of the administrative-process documents that he was required to submit to the court under WIS. STAT. § 801.02(7)(c), and that he failed to submit all of the administrative-process documents within the limitation period. Therefore, it is irrelevant if, at pertinent times, he separately did

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] As discussed more fully below, WIS. STAT. § 801.02(7)(c) requires a prisoner to submit "[a]t the time of filing the initial pleading to commence" such an action "documentation showing" that the prisoner "has exhausted all available administrative remedies." When considered as a whole, however, § 801.02(7)(c) unambiguously requires prisoners to initially submit more documents than those strictly necessary to prove exhaustion. For this reason, we refer to the submissions that are required by § 801.02(7)(c) as the "administrative-process documents," rather than using a reference such as the proof-of-exhaustion documents.

2

not have control over a document related to his request for a waiver of prepayment of costs and fees.

¶3    Mitchell also contends that the clerk of circuit court "usurped" the authority of the circuit court by declining, for a period of time, to "file" his writ petition. We reject this argument on the grounds that, for purposes of this appeal, it does not matter what the clerk did or did not do in terms of "filing" the writ petition, given that Mitchell fails to show that he was misled or hindered by any act or omission of the clerk and that the court properly dismissed the petition based on Mitchell's failure to timely submit all of the administrative-process documents that were within his control.

¶4    In the alternative, Mitchell argues that, even if he did not timely submit to the circuit court all of the administrative-process documents, the appropriate adverse consequence under WIS. STAT. § 801.02(7)(c) is denial of his request for a waiver of prepayment of the costs and fees for the filing of the writ petition, not dismissal of the writ petition. We disagree. Based on controlling precedent, and on our interpretation of § 801.02(7)(c) and closely related statutes, we conclude that the circuit court properly dismissed the writ petition because of Mitchell's failure to timely submit all administrative-process documents.

¶5    Accordingly, we affirm.

## BACKGROUND

¶6    In September 2021, institutional staff at Stanley delivered to Mitchell a report alleging that he had recently engaged in misconduct. Details regarding the alleged misconduct do not matter to this appeal. But, stated briefly, it included his alleged possession of "intoxicant paraphernalia" and use of

"intoxicants," in violation of WIS. ADMIN. CODE §§ DOC 303.44 and 303.60 (March 2018), respectively. The report also alleged that Mitchell's use of "intoxicants" resulted in the need to transport him by ambulance to a hospital. A prison disciplinary committee rejected Mitchell's denials of the factual allegations and found him guilty of these two code violations. The committee imposed sanctions of disciplinary separation and restitution for repayment of costs arising from the medical response to the incident. Stanley's warden denied Mitchell's appeal from the disciplinary committee's decision.

¶7     Mitchell initiated an administrative complaint through the inmate complaint review system.[3] He asserted that the restitution order violated his due process rights and constituted "a procedural error." Mitchell took his complaint through each step of the department's administrative review process for inmate complaints. He lost at each step. The last step ended with the decision of the department secretary, on March 16, 2022, to accept the recommendation of a corrections complaint examiner to dismiss his appeal of the denial of his inmate complaint.

¶8     The parties agree that the civil cause of action that Mitchell attempted to commence here accrued on the day of the secretary's decision. The parties further agree that this means that the 45-day limitation period within which Mitchell had to commence the action under WIS. STAT. § 893.735(2) would elapse on May 2, 2022, assuming no equitable tolling.

---

[3] A prisoner cannot obtain certiorari review of a prison disciplinary action until the prisoner has pursued all potential claims of procedural error through the institution's inmate complaint review system. *State ex rel. Tyler v. Bett*, 2002 WI App 234, ¶3, 257 Wis. 2d 606, 652 N.W.2d 800.

¶9     Seeking certiorari review, on April 26, 2022, Mitchell placed a number of documents, along with his affidavit listing the documents, in a prison mailbox for submission to the circuit court. We now describe those documents.

¶10    One set of documents was directly related to the writ petition: A petition for writ of certiorari and a proposed writ.

¶11    Another set of documents was related to a potential waiver of prepayment of costs and fees: (1) A petition for an order waiving costs and fees prepayment; (2) an affidavit of indigency; and (3) Mitchell's authorization that the department could take from his prison trust account appropriate payments toward the filing costs and fees.[4] Further supporting the request for a waiver of prepayment was a "three strikes" certification by the Wisconsin Department of Justice establishing that Mitchell had not pursued three dismissed prior civil cases of the types addressed in WIS. STAT. §§ 801.02(7)(d) and 802.05(4)(b)1.-4. Mitchell submitted the "three strikes" certification because he sought waiver of prepayment of costs and fees—a prisoner who has a "three strikes" status cannot obtain a waiver. *See* § 801.02(7)(d); WIS. STAT. § 814.29(1m)(c).

---

[4] Explaining further this category of documents, Mitchell did not submit prepayment of the costs and fees, or security for the costs, which would ordinarily be required to file a writ petition. Instead, he sought a waiver of prepayment on the grounds of indigency, pursuant to WIS. STAT. § 814.29(1m). *See* § 814.29(1m)(b)1. and 2. (prisoner seeking to commence certiorari action without full prepayment of fee must request leave and submit affidavit of indigency along with a certified copy of trust fund account statement for the preceding six months). If granted by the circuit court, this waiver relieves a prisoner of the duty to prepay the fee, but the prisoner must still make incremental payments until the fee is paid in full. *See* § 814.29(1m)(d)-(e). Depending on the outcome of the action, the prisoner still may be responsible for paying the balance of the filing fee. *See* § 814.29(1m)(e), (3)(a) and (b).

¶12    The parties in this appeal dispute the significance of two other documents that Mitchell submitted on April 26, both of which relate to administrative processes within Stanley and the department:   the warden's October 5, 2021 decision affirming the disciplinary committee decision and the secretary's March 16, 2022 decision rejecting Mitchell's inmate complaint.

¶13    In connection with his prepayment waiver request, Mitchell averred the following in his April 26 affidavit.  The day before, on April 25, Mitchell had requested from the Stanley business office a certified copy of his current prison trust fund account statement, but at the time of his April 26 submissions to the court he had not yet received that statement.  The record reflects that Stanley processed this request on April 28 and forwarded a certified statement to the court at some point.[5]

---

[5] The parties agree that the record does not reflect the date on which the circuit court received the certified account statement, only that it reflects possession by the court no later than May 17, 2022.  For reasons discussed below, it does not matter for purposes of resolving this appeal when the statement was forwarded to the court.

We now make a related observation.  The record in this appeal is less clear than it would be if the clerk of circuit court had used some method to memorialize when particular documents submitted to that office were *received* by that office, regardless of when the documents might be deemed "filed."  For comparison, in at least some other appeals, this court (and anyone else looking at the record) has had the benefit of being able to determine from the record when documents were received by clerks.  *See Tyler*, 257 Wis. 2d 606, ¶6 (noting that the record contained "a delivery receipt" showing when the clerk "received" a resubmitted petition); *State ex rel. Steldt v. McCaughtry*, 2000 WI App 176, ¶7, 238 Wis. 2d 393, 617 N.W.2d 201 (noting that clerk used "a date stamp stating 'Received'" with an accompanying date, to indicate when a petition was received in that office); *see also State ex rel. Locklear v. Schwarz*, 2001 WI App 74, ¶40, 242 Wis. 2d 327, 629 N.W.2d 30 ("Because of the shortened deadline for prisoners filing certiorari actions, it is extremely important that both clerk of courts and judicial offices keep thorough and meticulous records when dealing with pro se prisoner submissions.").

¶14    Mitchell asserts, and the State does not dispute, that the following events occurred following his April 26 submissions to the circuit court. On April 29, 2022, a staff attorney purporting to represent the Dane County Clerk of Circuit Court sent Mitchell a letter notifying him that the clerk's office had received his submissions but that "they have not been filed because you have failed to provide all documents required by Wisconsin law." On May 5 and also on May 10, Mitchell submitted additional administrative-process documents.

¶15    On May 17, 2022, the circuit court granted Mitchell's request for waiver of prepayment of costs and fees and the writ petition was deemed "filed." On May 20, the circuit court issued an order dismissing the writ action. The court determined that Mitchell failed to state a claim based on the fact that he had not submitted all required documents within the 45-day limitation period. The court indicated that the respondent would not be required to provide an answer or responsive pleading. Mitchell appeals the dismissal order.[6]

## DISCUSSION

¶16    Mitchell makes two primary arguments:  (1) the circuit court was obligated to treat as timely the submissions that Mitchell was required to make in connection with his writ petition; and (2) even if his submissions were not timely,

---

[6] Mitchell filed a motion for reconsideration of the circuit court order dismissing his writ petition, but the court did not address this motion, and neither side now makes an argument related to it.

Separately, through the State Bar of Wisconsin's Appellate Practice Section pro bono program, this court appointed Attorneys Douglas M. Raines and Emily Logan Stedman of the firm Husch Blackwell LLP to represent Mitchell in this court. We appreciate and commend the vigorous advocacy of these attorneys on Mitchell's behalf. We also thank the Section for continuing to sponsor this valuable program.

the appropriate adverse consequence is denial of the request for waiver of prepayment of the filing fee, not dismissal of the writ petition.

¶17     No relevant facts are disputed in this challenge to a circuit court order dismissing an attempt to commence an action for a writ petition based on the prisoner's failure to comply with a statutory limitation period.  For these reasons, as the parties correctly recognize, our review of issues involving the interpretation and application of statutes and prior appellate opinions is de novo.  *See State ex rel. Johnson v. Litscher*, 2001 WI App 47, ¶4, 241 Wis. 2d 407, 625 N.W.2d 887; *Meyers v. Bayer AG*, 2007 WI 99, ¶22, 303 Wis. 2d 295, 735 N.W.2d 448.

¶18     Courts begin statutory interpretation by examining the language of the statute.  *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.  If the court discerns a plain meaning in the language, that ordinarily ends the inquiry.  *Id.*  "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning."  *Id.*  "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."  *Id.*, ¶46.  If this inquiry "yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning."  *Id.* (quoted source omitted).

## I. MITCHELL FAILED TO TIMELY SUBMIT ALL ADMINISTRATIVE-PROCESS DOCUMENTS, ALL OF WHICH WERE IN HIS CONTROL, AND THIS REQUIRES DISMISSAL OF THIS WRIT ACTION

¶19 Mitchell's timeliness argument comes in two parts. He contends that the 45-day limitation was equitably tolled by his initial submissions to the circuit court before May 2, 2022. He also contends that the clerk of circuit court "usurped" the authority of the circuit court when the clerk did not immediately, upon receipt of the writ petition, treat it as "filed." We address the two parts of the timeliness argument in turn.

### A. WISCONSIN STAT. § 893.735(2) was not equitably tolled

¶20 Mitchell argues that, given the submissions that he made to the circuit court before May 2, 2022, the 45-day limitation period within which he had to properly commence this action was equitably tolled right up to the time when his writ petition was deemed "filed" on May 17, 2022—by which time all required documents had been submitted—and therefore his writ petition was timely submitted under WIS. STAT. § 893.735(2). This is so, Mitchell contends, because: he timely submitted all of the documents that he needed to submit regarding the waiver-of-prepayment request, except for his trust account statement; he had requested the missing trust account statement, which was not in his control; and the administrative-process documents required by WIS. STAT. § 801.02(7)(c), which he did not submit before May 2, were "inconsequential." We now briefly summarize the applicable statutes. We then explain why we conclude that: the limitation period was not tolled for purposes of the required timely submission of all administrative-process documents; Mitchell's point about tolling regarding the waiver-of-prepayment documents is not material to the dispositive issue involving failure to timely submit all administrative-process documents; and controlling case

9

law and unambiguous statutory language defeat his argument that omission of required administrative-process documents was "inconsequential."

¶21 WISCONSIN STAT. § 893.735 creates the 45-day limitation period, stating in pertinent part:

> (2) An action seeking a remedy available by certiorari made on behalf of a prisoner is barred unless commenced within 45 days after the cause of action accrues. The 45-day period shall begin on the date of the decision or disposition, except that the court may extend the period by as many days as the prisoner proves have elapsed between the decision or disposition and the prisoner's actual notice of the decision or disposition….[7]

> (3) In this section, an action seeking a remedy available by certiorari is commenced at the time that the prisoner files a petition seeking a writ of certiorari with a court.

*See also* **Johnson**, 241 Wis. 2d 407, ¶5 ("Failure to timely file a petition for certiorari under … § 893.735 may result in dismissal.").

¶22 We pause to note terminology that could generate confusion. Subsection (3) defines commencement of the action in terms of "the time that the prisoner *files* a petition." WIS. STAT. § 893.735(3) (emphasis added.) This would appear to define the commencement of the action to be the moment when a writ petition submitted by a prisoner is stamped "filed" by the clerk of circuit court, or at least when the clerk *should* stamp the writ petition as "filed." But, taking into account case law that describes various equitable tolling rules, commencement of the action is best understood as the moment when a prisoner has deposited in a

---

[7] Mitchell does not argue that the delay, if any, between the secretary's decision and his actual notice of it should have tolled the 45-day deadline.

prison mailbox all the required documents.[8]  *See State ex rel. Shimkus v. Sondalle*, 2000 WI App 238, ¶¶9, 11, 14, 239 Wis. 2d 327, 620 N.W.2d 409 (adopting "prison mailbox rule," which tolls 45-day deadline for the days needed for complete petition materials to be mailed to the circuit court).  For these reasons, while usage of the verb "file" as shorthand is understandable—indeed, it is the verb used in § 893.735(3)—it can be misleading to speak in terms of a requirement to "file" a writ petition with 45 days.  The rule is that prisoners have 45 days from the time the action accrues, *not counting days properly tolled*, to submit all required documents to the circuit court by placing them in a prison mailbox.

¶23    Turning to WIS. STAT. § 801.02(7)(c), this paragraph describes the scope of the administrative-process documents that "shall" be submitted by the prisoner seeking a writ of certiorari in order to commence an action:

> (c) At the time of filing the initial pleading to commence an action or special proceeding, including a petition for a common law writ of certiorari, related to prison or jail conditions, a prisoner shall include, as part of the initial pleading, documentation showing that he or she has exhausted all available administrative remedies.  The documentation shall include copies of all of the written materials that he or she provided to the administrative agency as part of the administrative proceeding and all of the written materials the administrative agency provided to him or her related to that administrative proceeding.  The

---

[8] As discussed more fully below, this example assumes that, at the time of this submission, the prisoner has not requested other required documents that are not within the prisoner's control, which necessarily delays the commencement of the action through the required complete filing, but can also provide a distinct basis to toll the filing deadline.  *See Tyler*, 257 Wis. 2d 606, ¶¶2, 11-12 (mailbox rule applies "only after a prisoner deposits for mailing a petition that is complete, in proper form and accompanied by the required filing fee or fee-waiver documents"; discussing other applications of tolling deadline to commence action with a complete submission based on a "loss of control rationale").

> documentation shall also include all written materials included as part of any administrative appeal. The court shall deny a prisoner's request to proceed without the prepayment of fees and costs under [WIS. STAT. §] 814.29(1m) if the prisoner fails to comply with this paragraph or if the prisoner has failed to exhaust all available administrative remedies.

¶24 We now summarize the combined effects of the commencement-of-action and limitation-period features of WIS. STAT. § 893.735(2)-(3) and the submission-of-administrative-process documents requirement in WIS. STAT. § 801.02(7)(c). In order to "commence" a writ action, a prisoner "shall," within 45 days of accrual, "include, as part of the initial pleading," "all written materials" generated in the administrative proceedings that the prisoner must pursue before seeking the writ. In other words, as discussed further below, the administrative-process documents expansively described in § 801.02(7)(c) are required to timely pursue a prepayment waiver;[9] and they are also required to timely commence the writ action.[10]

¶25 Applying these rules here, if the limitation period was not equitably tolled for purposes of the submission of required administrative-process documents, then Mitchell's writ petition was properly dismissed by the circuit

---

[9] *See **State ex rel. Walker v. McCaughtry***, 2001 WI App 110, ¶¶17-18, 244 Wis. 2d 177, 629 N.W.2d 17 (documents required under WIS. STAT. § 801.02(7)(c) are among those necessary to obtain order waiving prepayment of costs and fees).

[10] *See **Tyler***, 257 Wis. 2d 606, ¶2 ("[T]he 'mailbox rule' tolls the statutory filing deadline only after a prisoner deposits for mailing a petition that is complete, in proper form[,] and accompanied by the required filing fee or fee-waiver documents."); *see also **State ex rel. Shimkus v. Sondalle***, 2000 WI App 238, ¶9, 239 Wis. 2d 327, 620 N.W.2d 409 (noting that even if a prisoner makes a submission within the 45 days, the circuit court "may still decline to allow the action to proceed if the fee and other requirements of [WIS. STAT.] §§ 801.02 and 814.29 are not met").

court. This is because, as Mitchell does not now dispute, he did not submit all of the required administrative-process documents until May 10, eight days after the May 2 end of the limitation period.

¶26 Mitchell's central argument on this issue is that application of the limitation period to his submissions was subject to equitable tolling under applicable case law. We disagree.

¶27 The general rule is that, for purposes of WIS. STAT. § 893.735(2), tolling of the 45-day clock for prisoners to commence actions "begins when the [required] documents over which prisoners have control have been mailed, and all of the [required] documents over which prisoners have no control have been requested" by the prisoners. *State ex rel. Walker v. McCaughtry*, 2001 WI App 110, ¶¶17-18, 244 Wis. 2d 177, 629 N.W.2d 17. The clock resumes running when the required and timely requested documents come to be "within the prisoner's control, such as when a prisoner receives a ['three strikes'] certification for forwarding to the court."[11] *Id.*, ¶18. The rationale for this tolling rule is that there are many restrictions on the activities of persons confined in prisons that affect their ability to litigate in the same way that persons outside prisons can. The rule provides "an equitable solution for prisoners seeking to comply" with the 45-day limitation period, requiring the timely submission of required documents over which prisoners have control or that they have timely requested. *Id.*, ¶¶15, 17 (citing reasoning in *Houston v. Lack*, 487 U.S. 266, 271 (1988)), which

---

[11] Apparently the statement related to Mitchell's trust account was sent directly by prison staff to the circuit court, whether or not this document was also given directly to Mitchell at the same time. Under the logic of *Walker*, 244 Wis. 2d 177, ¶¶17-18, tolling relative to this document would have continued until the moment this document was received by the court.

13

established prison mailbox rule for federal pro se prisoners, premised on the relaxed procedural requirements traditionally afforded to pro se prisoners whose potential litigation activities are necessarily restricted—for example, prisoners have no choice but to rely on prison authorities to file their pleadings).

¶28 The general lack-of-control rule as stated in **Walker** does not help Mitchell here. This is because he does not dispute that he had control over all of the administrative-process documents before the May 2 end of the limitation period and he did not submit the last of them until May 10. As **Walker** explains, prisoners must "comply with the deadline to the extent they have control over the relevant documents," otherwise prisoners would have an advantage "over other litigants, contrary to legislative intent." **Walker**, 244 Wis. 2d 177, ¶¶17-18; *see also **id.**, ¶20 (noting that "documents over which Walker had control" in that case included "the documentary proof of exhaustion of administrative remedies").

¶29 Mitchell's argument rests heavily on the fact that his April 26 affidavit averred the following regarding his request for a waiver from prepayment of filing costs and fees, as summarized above. On April 25, he had requested from the prison's business office a copy of his current prison trust fund account statement, which had not yet been produced. Based on this averment, he contends, the 45-day limitation period was tolled for all purposes—including the required submission of administrative-process documents—until the circuit court deemed the writ petition filed on May 17. In purported support, Mitchell cites **State ex rel. Steldt v. McCaughtry**, 2000 WI App 176, 238 Wis. 2d 393, 617 N.W.2d 201. But as we now explain, **Steldt** addresses a narrow issue and does not support Mitchell's current argument.

¶30　In *Steldt*, we consolidated the appeals of three prisoners who pursued similar arguments in challenging dismissal of their writ petitions and we addressed one question that was common to all three appeals. *Id.*, ¶¶2, 14, 17-18. That question was the following:　When a prisoner has submitted all required documents before the 45-day period has run, including all documents necessary to establish a waiver of prepayment of the filing costs and fees, is the 45-day period tolled for "the time taken by the [circuit] court to determine whether the prisoner must pay any fees before proceeding" because this determination "is out of the prisoner's control"? *Id.*, ¶17.　Interpreting multiple statutes, we answered yes. *Id. Steldt* neither refers generally to administrative-process documents nor specifically to WIS. STAT. § 801.02(7)(c).[12]　The reasoning in that case simply does not apply to the facts here, because it is not disputed that Mitchell did not submit all required documents before the 45-day period elapsed.　In sum, *Steldt* addresses equitable tolling of only that time which the circuit court uses to consider whether the requirements for waiver of the prepayment of filing costs and fees are satisfied. *Steldt* does not suggest that a prisoner's failure to timely file all administrative-process documents under § 801.02(7)(c) is excused if there is a delay in the prisoner obtaining documents needed for the waiver of prepayment under WIS. STAT. § 814.29(1m) that have been timely requested by the prisoner.

¶31　*Tyler* is a closer match to the facts here.　In that case, we determined that the "fatal flaw" in the prisoner's request to apply the tolling rule is that the

---

[12] For context we note that, at the time *Steldt*, 238 Wis. 2d 393, was issued, WIS. STAT. § 801.02(7)(c) (1999-2000) contained the same wording as now appears in the current version of § 801.02(7)(c).　Thus, the requirement that the prisoner timely submit all administrative-process documents existed at that time, but it was not at issue in *Steldt*.

prisoner "did not place all of the required documents" that were in the prisoner's control in a prison mailbox until after the 45-day period elapsed. *See **State ex rel. Tyler v. Bett***, 2002 WI App 234, ¶3, 257 Wis. 2d 606, 652 N.W.2d 800. We explained that the tolling rule should not be used to "reward" prisoners with "extra time to remedy matters" that are "within [their] control." ***Id.***, ¶16.

¶32 Mitchell makes an alternative argument that is not tied to case law addressing equitable tolling. He contends that his failure to timely submit all administrative-process documents was "inconsequential" and "harmless." This is so, he argues, because the two documents regarding the administrative process that he timely submitted—the warden's decision affirming the committee decisions and the secretary's decision accepting rejection of the inmate complaint—establish that he had in fact exhausted all administrative remedies.

¶33 There is logic to Mitchell's position insofar as Mitchell could not have obtained these two documents as they now appear in the record without having in fact exhausted all potential administrative remedies. *See **Walker***, 244 Wis. 2d 177, ¶3 (noting that after the warden affirmed the disciplinary committee's determinations and the secretary adopted a recommended dismissal of his inmate complaint, "Walker had exhausted all of his appeals within the corrections system."). As referenced *supra*, n.2, when the terms of WIS. STAT. § 801.02(7)(c) are considered as a whole, it could create confusion that the statute refers in part to the requirement that a prisoner submit "documentation showing that [the prisoner] has exhausted all available administrative remedies." Mitchell timely provided proof of exhaustion.

¶34 Nevertheless, the pertinent statutes unambiguously require more. In order to commence the action, Mitchell had to submit to the circuit court, as part

of his "initial pleading" within the 45 days, *all* documents related to the administrative process. *See* WIS. STAT. §§ 893.735(2)-(3), 801.02(7)(c). Section 801.02(7)(c) uses expansive, unqualified language that on its face represents a legislative determination that a submission must timely include *all* such documents, not only those proving exhaustion-in-fact. The apparent legislative intent is to require prisoners to provide the court with a complete picture of what occurred in the administrative process when a writ action is commenced and before a response is required from the respondent. This is what Mitchell failed to do. Thus, he did not satisfy the requirements under the only reasonable interpretation of §§ 893.735(2) and 801.02(7)(c). If the legislature had meant to require only the documents that Mitchell timely submitted, it would have used different terms. It would be for the legislature to relax the requirement to require only that prisoners submit documents sufficient to establish exhaustion-in-fact.[13]

---

[13] Although it does not affect the outcome here, we observe that Mitchell has the better argument regarding one unsupported position taken by the State in this appeal. The State argues that, even beyond Mitchell's failure to submit to the circuit court all administrative-process documents in his possession before May 2, 2022, Mitchell's submissions were untimely because he did not request the certified copy of the trust fund account statement until five days before the 45-day limitation elapsed. According to the State, Mitchell's delay in requesting that document caused him to "miss[] the filing deadline due to his own conduct." The State bases this position primarily on a misinterpretation of statements in *Walker*, as we now explain.

The State cites the following two aspects of *Walker*. First, the 45-day limitation elapsed in that case on July 19, and under one possible scenario Walker did not request a trust account statement until mid-September, *long after the deadline had passed*. *Walker*, 244 Wis. 2d 177, ¶¶11, 24. The court observed that if that is what occurred, "Walker missed the filing deadline due to his own dilatory conduct." *Id.*, ¶24. Second, the court in *Walker* emphasized that prisoners are entitled to be treated equitably with other litigants but not advantaged over other litigants. *Id.*, ¶18. Neither of these observations in *Walker* cited by the State support its position to the following effect: When a prisoner makes a request, before the 45-day deadline, for documents that must be timely submitted and that are not already in the prisoner's control, equitable tolling cannot apply when that request is made "too late."

(continued)

### B. Mitchell fails to show that the actions or inactions of the clerk are relevant

¶35 Mitchell makes an alternative argument based on action or inaction by the clerk of circuit court, even if equitable tolling does not apply. The argument is that the clerk, upon the clerk's receipt of the April 26, 2022 submissions from Mitchell, had the ministerial responsibility under WIS. STAT. § 59.40(2)(a) to treat the writ petition as "filed." *See* § 59.40(2)(a) (providing in pertinent part that clerks of court "shall" "[f]ile and keep all papers properly deposited with" them "in every action or proceeding unless required to transmit the papers"). According to Mitchell, if the clerk had filed Mitchell's writ petition upon the clerk's receipt, it would have been timely. There are several aspects of this argument that are unclear to us. But we resolve this issue based on one argument by the State, namely, that it does not matter when the clerk deemed the writ petition to be "filed." This is because, regardless of any act or omission of the clerk, the circuit court had the ultimate responsibility under WIS. STAT. § 893.735(2) to determine whether Mitchell had timely filed all required documents. As discussed above, there is no dispute that Mitchell failed to timely submit at least some required administrative-process documents. Put differently, Mitchell is wrong when he argues that the clerk caused the dismissal through what

---

The State also cites non-binding authority for the proposition that equitable tolling applies only when an "extraordinary circumstance" prevents a prisoner from submitting documents timely, but the State fails to show that this proposition is part of Wisconsin law. We agree with Mitchell that the State fails to explain how such an "extraordinary circumstance" notion could provide Wisconsin courts with a principled, objective guideline to use in determining which prisoner requests for documents are made before the 45-day deadline but "too late" and which are not "too late." In sum, the State provides no authority for the proposition that a request made before the 45-day deadline can or must be deemed to have been made "too late" for purposes of equitable tolling.

Mitchell describes as the clerk's "refusal to comply with its statutory obligation to file Mitchell's petition upon receipt."

¶36   Mitchell cites case law supporting the proposition that a clerk of circuit court does not have judicial powers and instead acts in an official capacity exclusively pursuant to clerk-specific duties set forth in statutes. He also clarifies that he is not arguing that clerks may never decline to accept papers for "filing," but instead only that clerks may not decline to do so on the ground that they are part of a set of submissions that is not yet complete for a particular purpose. Putting aside the merits of these points, however, Mitchell fails to come to grips with the dispositive point in this case:  the circuit court had the responsibility, under WIS. STAT. § 893.735(2), to decide whether the submissions were timely— regardless of anything the clerk did or did not do.[14]

## II.    THE PROPER CONSEQUENCE IS DISMISSAL OF THE WRIT PETITION

¶37   Relying on his interpretation of WIS. STAT. § 801.02(7)(c) and a closely related statute, § 801.02(7)(d), Mitchell argues that, even if his submissions were not timely, the exclusive appropriate response for the circuit court was to deny his request for waiver of prepayment of filing costs and fees.

---

[14] We emphasize that we are not asked to decide what might happen if a clerk of circuit court provides incorrect information to a prisoner or in some other manner misdirects or hinders a prisoner's ability to meet the 45-day deadline for submissions.  *See Steldt*, 238 Wis. 2d 393, ¶16 ("While we acknowledge that circuit court clerks have the discretion to refuse to file any paper without payment of the appropriate fees, it is unreasonable for that discretion to be exercised in a manner that denies prisoners their ability to bring certiorari actions.").  We reject only Mitchell's narrow argument that here the clerk's "refus[al] to file" his submissions "upon receipt" "interrupted" a judicial procedure and therefore should result in reversal of the circuit court order dismissing this action.

According to Mitchell, the court did not have authority under § 801.02(7)(c) to dismiss his writ petition as a result of his failure to timely submit all required administrative-process documents. We reject this based on controlling precedent and our interpretation of all pertinent statutes when they are interpreted in proper context. *See Kalal*, 271 Wis. 2d 633, ¶46 ("[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.").[15]

¶38    At *supra*, ¶23, we quote WIS. STAT. § 801.02(7)(c), which sets forth the requirement that prisoners include in their timely submissions all administrative-process documents. Mitchell directs us to its final sentence: "The [circuit] court shall deny a prisoner's request to proceed without the prepayment of fees and costs under [WIS. STAT. §] 814.29(1m) if the prisoner fails to comply with this paragraph or if the prisoner has failed to exhaust all available administrative remedies." Mitchell's point is that this provides only one adverse

---

[15] Separately, we note two unrelated additional arguments by the parties that do not play any role in our resolution of this appeal.

First, Mitchell's opening brief on appeal contends that dismissal of his writ petition is not appropriate because his failure to timely submit administrative-process documents within his control was "harmless." But, as the State points out, "harmless error analysis does not apply" here, in part because there was no error by the circuit court if the court correctly applied the pertinent statutes to the facts before it. Mitchell concedes the point by failing to respond to this point in his reply brief. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to argument made in response brief may be taken as concession).

Second, we do not address the thinly developed references by both parties regarding the State's assertion that the circuit court lost competency to issue the requested writ based on Mitchell's untimely submissions.

consequence for prisoners for failure to timely submit all administrative-process documents and does not mention the consequence of writ petition dismissal.

¶39 Mitchell contrasts this with language in WIS. STAT. § 801.02(7)(d). Paragraph (7)(d) explicitly authorizes the dismissal of a prisoner's writ petition if the prisoner seeks a waiver of the fee prepayment requirement but has accumulated "three strikes."[16]   Mitchell argues that the only reasonable interpretation of these two statutory provisions is that the legislature has selected a single consequence (denial-of-fee-waiver) in all cases in which the prisoner fails to submit all administrative-process documents and a different single consequence (dismissal-of-writ-petition) in all cases in which the prisoner seeks a waiver and has "three strikes."

¶40 Unfortunately, the closely related statutes are not models of clarity. Mitchell's argument is plausible if one's attention is limited to the two sentences that he highlights.  But as we now explain, case law leaves no room for Mitchell's position.  Beyond that, as we further explain, interpreting all closely related statutes, Mitchell's narrow focus on the last sentence in WIS. STAT. § 801.02(7)(c) and the consequence stated in § 801.02(7)(d) misses the mark.  This is because these do not establish that denial of a prepayment waiver is the *exclusive* adverse

---

[16] Explaining more fully, writ petition actions must be dismissed under WIS. STAT. § 801.02(7)(d) when a prisoner has on at least three prior occasions had an action dismissed for the reasons listed in WIS. STAT. § 802.05(4)(b)1.-4., and when the prisoner petitions the circuit court for a waiver from prepayment of filing costs and fees. *See* § 801.02(7)(d); ***State ex rel. Coleman v. Sullivan***, 229 Wis. 2d 804, 601 N.W.2d 335 (Ct. App. 1999) (prisoner's action will be dismissed if the prisoner seeking a waiver of prepayment of filing costs and fees has filed three previous frivolous or improper actions or appeals).

consequence when the prisoner fails to timely submit all administrative-process documents.

¶41 Addressing case law first, this court has stated that "[t]he absence of" "[a]ll documentary evidence of exhaustion of administrative remedies" under WIS. STAT. § 801.02(7)(c), which "is considered part of the initial pleading and must be attached to all copies of" the writ petition, "can lead to the [circuit] court's rejection of the petition." *State ex rel. Locklear v. Schwarz*, 2001 WI App 74, ¶22, 242 Wis. 2d 327, 629 N.W.2d 30 (emphasis omitted). *Walker* and *Tyler* both quote *Locklear* to the same effect. *Walker*, 244 Wis. 2d 177, ¶12; *Tyler*, 257 Wis. 2d 606, ¶12 n.6. The State cites *Tyler* on this issue and Mitchell fails to reply, conceding the point.[17]

¶42 Turning to the statutory language, the last sentence of WIS. STAT. § 801.02(7)(c) does not state that denial of a petition to proceed without prepayment of costs and fees is the "only" or "exclusive" consequence for failure to include the administrative-process documents or show exhaustion. Instead, when properly construed, that sentence merely identifies dismissal of a petition for prepayment waiver as one consequence because additional remedies are understood from context. The sentence must be understood in the context of the

---

[17] We are bound to follow this precedent as explained in *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). But we question the statutory basis for the particular feature of the case law cited in the text that the initial pleading of a prisoner who is seeking a prepayment waiver must include a "three strikes" certification created by the Wisconsin Department of Justice. WISCONSIN STAT. § 801.02(7)(d) speaks in terms of the litigation history of the prisoner, which effectively requires the prisoner who is seeking waiver of prepayment to plead that the prisoner does not have "three strikes." But the statute does not speak in terms of a required certificate. Nonetheless, the certificate is required given the controlling case law. It would be for our supreme court, through new interpretation, or the legislature, through new lawmaking, to create a different rule. Further, no aspect of the "three strikes" rule is at issue in this appeal.

combined meaning of WIS. STAT. §§ 893.735(2)-(3) and 801.02(7)(c), which as we have explained is that, in order to "commence" a writ action, a prisoner "shall," within 45 days of accrual, "include, as part of the initial pleading" "all written materials" involved in the administrative proceedings that the prisoner has to pursue before seeking the writ.

¶43    Significantly, as the State points out, Mitchell's argument overlooks the hypothetical case in which a prisoner prepays the filing costs and fees, yet fails to timely submit all administrative-process documents.  If Mitchell's interpretation were correct, then WIS. STAT. § 801.02(7)(c) would have no effect in that hypothetical case.  This would create starkly different circumstances between writ actions in which prisoners prepay costs and fees and those in which prisoners seek waivers of prepayment.  Only in the writ actions in which a prisoner seeks waiver of prepayment would the prisoner have to include in the prisoner's "initial pleading" a complete written record of administrative proceedings.  When the prisoner is prepaying, no such record would be brought before the court at this early stage.  Given that the apparent purpose of the circuit court's preliminary review of the writ petition submissions is to determine, in part, if the writ petition is frivolous or fails to raise a claim, regardless of indigency, Mitchell fails to show that this is a result that the legislature could have intended given the contextual statutory signals to the contrary.  *See* WIS. STAT. § 802.05(3)(a)-(b); ***State ex rel. Schatz v. McCaughtry***, 2003 WI 80, ¶¶15-16, 263 Wis. 2d 83, 664 N.W.2d 596 ("initial pleading review procedure advances [the] objectives" of Prisoner Litigation Reform Act to reduce costs of "excessive or otherwise inappropriate prisoner-initiated litigation").

¶44    This is all the more clear given what is at issue in these certiorari actions.  The pertinent standards for determining if the petitioner has stated a

viable claim on certiorari review are limited to review of a narrow set of possible errors by the agency in how it handled the administrative process, which is reflected in the administrative-process documents. *See* ***State ex rel. Ortega v. McCaughtry***, 221 Wis. 2d 376, 385, 585 N.W.2d 640 (Ct. App. 1998) ("Judicial review on certiorari is limited to whether the agency's decision was within its jurisdiction, the agency acted according to law, its decision was arbitrary or oppressive and the evidence of record substantiates the decision."). Mitchell fails to reply to related points made by the State.

¶45 It is true that the legislature makes other distinctions among prisoners in this general context. For example, the "three strikes" barrier created by WIS. STAT. §§ 801.02(7)(d) and 814.29(1m) affects only those prisoners who seek waivers of prepayment and does not affect prisoners who prepay the filing fee. But the rationale for this distinction is obvious. The prisoner who has filed three frivolous or meritless petitions has lost the benefit of waiver of prepayment and is therefore required to save prison funds before filing a new petition. That would be quite different from establishing a rule under which only those prisoners who seek prepayment waivers must submit timely all administrative-process documents. It is difficult to imagine a rationale for such a rule and again Mitchell provides none.

¶46 For the first time in his reply brief, Mitchell briefly suggests that there is a conflict between WIS. STAT. § 893.735(2), with its 45-day limitation period, and WIS. STAT. § 801.02(7)(c), with its requirement to submit administrative-process documents referring only to the consequence of dismissal of a petition for prepayment waiver. His argument is that § 801.02(7)(c) controls as the more specific statute. We disagree that there is a conflict for reasons we have already stated. The prisoner must timely submit all of the administrative-

process documents whether or not the prisoner requests waiver of prepayment, and § 801.02(7)(c) simply clarifies that prepayment petitions are dismissed when the prisoner does not timely submit all administrative documents and show exhaustion.

## CONCLUSION

¶47 For all of these reasons, we affirm the circuit court's order dismissing the action.

*By the Court*.—Order affirmed.